IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KENNETH GOODMAN,** | * | |
| Petitioner, | * | |
| v. | * | Civ. No. DLB-21-3294 |
| **WARDEN,** | * | |
| Respondent. | * | |

**MEMORANDUM OPINION**

In December 2021, Kenneth Goodman filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the legality of his state-court convictions. A final judgment in Goodman's state-court postconviction proceedings did not issue until two and a half years after he filed his habeas petition. The respondent asserts the petition must be dismissed because Goodman's claims are procedurally defaulted. No hearing on the petition is necessary. *See* Rule 8(a), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2025); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons below, the petition is dismissed, and a certificate of appealability shall not issue.

I.   **Background**

A.  **State Proceedings**

On December 20, 2019, Goodman was indicted in the Circuit Court for Charles County *See* ECF 10-1, at 4, 6. On June 7, 2021, Goodman pleaded guilty to first-degree assault and conspiracy to commit home invasion. ECF 10-3. At the plea hearing, the prosecutor offered the following description of the evidence against Goodman:

STATE'S ATTORNEY KOPELMAN: Your Honor, had the matter been a trial the

evidence would have been that on November 25th, 2019, Sandra Lagana (phonic) was at her house at 3379 Harrow Court, Waldorf, Charles County, Maryland. She had errands with her friend, Thomas Unkle. She had gone back to that location with Mr. Unkle and she believed she was taking Mr. Unkle home. Unbeknownst to her, Mr. Unkle has conspired with the Defendant as well as Jose Santiago, the other co-defendant, to plan a home invasion and robbery against Ms. Lagana. So, Ms. Lagana was going out the door of her home believing she was giving Mr. Unkle a ride when the Defendant and co-defendant, Jose Santiago, forced their way in and attacked Ms. Lagana. Her injuries included broken facial bones, which did include her nose, as well as, back injuries, a brain and bruising and swelling on her face. They duct taped her and ultimately did in fact take money from the home as well as driver[']s license, credit card, a safe with prescription pills, and her phone. They left the house when Ms. Lagana left, went to the neighbor's house, explained what happened. Police were called.

THE COURT: What time was this?

STATE'S ATTORNEY KOPELMAN: It was about - I think about 12 I believe.

THE COURT: In the afternoon?

STATE'S ATTORNEY KOPELMAN: It is in - during the daytime. And Mr. Unkle originally told the police essentially that he was a victim. Ultimately, he did explain what happened. The police the following day made contact with Mr. Goodman, who was with Mr. Santiago. On Mr. Santiago's person was a backpack that had duct tape in it as well as empty prescription pill bottles, some gloves, a hoodie jacket and other gear. The police did take that evidence, and have it tested. At trial, had the matter been a trial, Diane Lauder would have testified that she's an expert in duct matching and she would have testified that in fact the duct in that backpack matched duct tape found on the victim when the police arrived on scene. Further, the evidence was taken to the DNA lab. DNA experts, Angela Speccerd (phonic) and Rebecca Levine would have testified as to the DNA in this case. There was in fact the victim's DNA on a glove in that backpack, as well as, Mr. Santiago's DNA on that same glove. And there was hair on that duct tape that resembled the victim's hair. And there was also the victim's DNA on the duct tape. Furthermore, the police when they were making contact with Mr. Unkle were able to retrieve his phone and discovered text messages that he would have testified were between him and Mr. Goodman at the time of the crime. At around 11:09 there's a text message that says we'll burn one in 15 minutes so it's good. At 11:15 Mr. Goodman is telling Mr. Unkle leaf blower out [sic]. And the State would have had evidence from a neighbor who would have testified he was in fact blowing leaves at - just prior to this crime being committed. And that text message, the State would have argued was indicating that Mr. Goodman's outside the home essentially telling Mr. Unkle, look, the leaf blowers out so we're not going get a certain pause on this crime that's about to be committed. Then, a short time later, 11:21 Mr. Goodman is telling Unkle in a text message now. And the leaf blower would have testified, of course,

> that he was no longer blowing leaves. Then at 11:25 (inaudible) Mr. Goodman is telling Mr. Unkle come out. When Mr. Unkle gets that he battles in the door and then his crime continues to ensu[]e as the State has described. The State would have presented evidence from Mr. Unkle and he would have explained that he did conspire to do this crime with Mr. Goodman, the co-defendant and he would have explained that Mr. Goodman was involved in a crime and did enter the home. The police made contact with Mr. Goodman, he did make a statement. Although he first initially denied going into the house. Ultimately, he admitted going in, although at sometimes he does suggest, look, I went back out before the assault was taking place. He explained um - part of the statement was when the police said to him, so you're base - you're telling me you're at the house. He stated yeah and the - the police essentially said, how does anyone know to go into the house if you're not with him and he said, you're right and then he explained Thomas texted me, let's burn one, that's when he opened the door. We rushed in. Joe go downstairs with her. Go downstairs with the lady upstairs. It's crazy and then he, you know, he - so then he did that to the lady. And he goes on. So, he gave details of the crime in that statement. All events did occur in Charles County, Maryland. That's some of the State's evidence had the matter gone to trial.

*Id.* at 15–19. Goodman agreed to the description of the state's evidence during the plea hearing. *Id.* at 19.

Days after the hearing, Goodman wrote the circuit court stating that he "was set up" to plead guilty. ECF 10-1, at 20. His attorney had his wife encourage him to plead guilty and told him he was facing a 30-year sentence and then said the possible sentence was 71 years, which convinced him to plead guilty because "71 years is a lot of time." *Id.* at 19–20. His counsel then filed a motion to withdraw the guilty plea on the ground that, under those circumstances, his plea was not voluntary. *Id.* at 22–23. On August 3, 2021, the circuit court held a hearing and denied Goodman's motion to withdraw his plea, finding the plea was knowing and voluntary. ECF 10-4, at 69–70. On September 1, 2021, the circuit court sentenced Goodman to 15 years' incarceration. ECF 10-5, at 56.

On October 27, 2021, Goodman filed a petition for postconviction relief in the state court, which he supplemented on January 5, 2022. ECF 10-1, at 24–25. He contended that (1) the court breached the plea agreement by sentencing him above the guidelines range; (2) his guilty plea was

3

not knowing and voluntary; and (3) trial counsel was ineffective because counsel failed to review discovery with Goodman and failed to file a motion for reconsideration of the sentence. *See id.*; ECF 15-1, at 6–7.

The circuit court held a hearing on the postconviction petition on August 1, 2022 and ruled from the bench, granting, with the consent of the state, relief on Goodman's ineffective assistance of counsel claim that his counsel failed to file a motion for modification or reconsideration of the sentence. ECF 15-1, at 7–8, 11, 75. To remedy the violation, the court gave Goodman leave to file that motion within 90 days. *See id.* at 75. The court denied Goodman's petition in all other respects. *Id.* at 75–79.

Nearly two years later, on June 12, 2024, the court issued a written order that restated what it had ruled from the bench in 2022. ECF 12-1, at 46. The order granted Goodman's "request for post-conviction relief as it pertains to failure of counsel to file a motion for reconsideration"; gave Goodman 90 days to file that motion (which he filed on October 24, 2022, ECF 10-1, at 13); and once again, denied all other forms of relief. *Id.* Goodman appealed the June 12, 2024 order to the Appellate Court of Maryland on July 15, 2024. ECF 1, at 9, 12. The document was returned to him on July 22, 2024 because it included restricted information and he did not filed the proper notice with it. ECF 13-2, at 1. There is no indication in the state record that Goodman ever tried again.

### B. Federal Proceedings

Meanwhile, on December 27, 2021, well before the state court ruled on his postconviction petition, Goodman filed a petition for a writ of habeas corpus in this Court. ECF 1. He supplemented the petition with leave of Court on October 19, 2022. ECF 6. In the petition, Goodman alleges two grounds for his petition: that he had ineffective assistance of counsel and that the trial court failed to address his two motions for new counsel. *See* ECF 1, 6. For his

4

ineffective assistance claim, Goodman alleges that counsel had "misinformed [him] of which charge [he] was pleading to"; counsel had failed to adequately communicate; counsel had pressured him into taking a plea deal; and counsel had failed to file a motion for leave to appeal. *See* ECF 1, 6. On December 9, 2022, the respondent filed his initial response opposing Goodman's petition. ECF 10. The respondent argued that the Court should dismiss the petition because (1) Goodman had not exhausted several claims in state court and (2) other claims were procedurally defaulted—Goodman had never raised them in state court at all—so they were unreviewable by a federal court. *See id.* at 47–50. The respondent further argued that the Court should deny the claims on the merits. *See id.* at 51–62

More than a year passed before the next filing. On May 31, 2024, the Court ordered the respondent to update the Court on Goodman's state-court postconviction proceedings. ECF 11. In that Order, the Court also allowed Goodman to reply to the respondent's procedural default argument. *Id.* The respondent filed a status report advising that "Goodman's state postconviction proceedings [were] still ongoing (although they [were] likely [to] conclude shortly)." ECF 12, at 1. The respondent explained that the state court entered a final order in Goodman's state-court postconviction proceedings on June 14, 2024 (which had been signed June 12), which would become final on July 15, 2024, when the appeal period expired, and the proceedings would conclude at that time unless Goodman filed an application for leave to appeal. *Id.* at 3. Two months later, on August 29, 2024, the respondent supplemented his response. ECF 13. In it, the respondent argued that Goodman has procedurally defaulted his claims because he failed to appeal the June 14, 2024 denial of his postconviction petition within 30 days. *Id.* at 7–10. The respondent also argued that two of Goodman's claims—that his counsel failed to file a motion for appeal and that the trial court failed to address the motions for new counsel—are procedurally defaulted because

5

Goodman never raised them in state court. *Id.* at 47–48. Alternatively, the respondent argued the petition is meritless. *Id.* at 51–62.

Goodman eventually filed an amended petition (without leave of Court), ECF 18, but neither that petition nor his other filings address the respondent's procedural default arguments. *See* ECF 16, 17, 18.

On August 22, 2025, Goodman filed a motion to stay or dismiss his petition without prejudice because he recently was advised that he did not exhaust his remedies in state court. ECF 21. Goodman argues that when he was completing § 2254 forms recently, he received the help he had not received previously and learned "that 2254 was inapplicable, because Goodman failed to exhaust his remedies in State Court," as "Sentence issues were raised and not finally litigated." ECF 21, at 1–2. He asks the Court to stay his petition or dismiss it without prejudice because "there are available State remedies." *Id.* at 2. On August 28, 2025, the respondent opposed the motion. ECF 22. Goodman has not filed a reply.

**II.   Discussion**

**A.  Goodman's Motion to Stay or Dismiss His Petition**

Goodman moves to stay or withdraw his petition without prejudice to allow him time to exhaust his state court remedies. Under Rule 41(a)(2), Goodman cannot withdraw his petition without leave of court because the respondent has filed an answer. In these circumstances, a petition may be dismissed only "on terms that the court considers proper." *See* Fed. R. Civ. P. 41(a)(2); *see also* Fed. R. Civ. P. 41(a)(1)(A)(i) (allowing voluntary dismissal before an answer is filed).

To determine whether to grant a plaintiff's request for dismissal without prejudice, the court "focus[es] primarily on protecting the interests of the defendant." *Davis v. USX Corp.*, 819

6

F.2d 1270, 1273 (4th Cir. 1987). Other nonexclusive factors "include the opposing party's effort and expense in preparing for trial; excessive delay or lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of the litigation, including whether a dispositive motion is pending." *Messer v. Bristol Compressors Int'l, LLC*, No. 1:18CV00040, 2020 WL 1472217, at *12 (W.D. Va. Mar. 26, 2020) (citing *Hobbs v. Kroger Co.*, No. 98-1831, 1999 WL 156045, at *1 (4th Cir. Mar. 23, 1999).

Even though the primary focus is on protecting the interests of the defendant, "[a] plaintiff's motion under Rule 41(a)(2) for dismissal without prejudice should not be denied absent substantial prejudice to the defendant." *Andes v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir. 1986); *see Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001) (citing *Andes* and requiring "plain legal prejudice to the defendant" for denial of dismissal without prejudice). "[T]he prospect of a subsequent lawsuit does not constitute prejudice for purposes of Rule 41(a)(2)." *Ellett*, 275 F.3d at 388–89 (citing *Davis*, 819 F.2d at 1274). Nor does "the possibility that the plaintiff will gain a tactical advantage over the defendant in future litigation." *Messer*, 2020 WL 1472217, at *12 (citing *Davis*, 819 F.2d at 1273).

In *Andes*, the district court denied the plaintiff's motion to dismiss his complaint without prejudice, and the Fourth Circuit affirmed. 788 F.2d at 1036. The Fourth Circuit noted that the defendants had "incurred significant expenses, not only in responding to Andes' complaint and filing motions and memoranda in support of summary judgment, but also by incurring substantial costs of discovery, through depositions, production of documents, and obtaining of expert opinions on English law." *Id.* The court found that the prejudice to the defendants was not as "extreme" as it was in *Rollison v. Washington National Insurance Co.*, 176 F.2d 364 (4th Cir. 1949), "where [the] plaintiff sought to dismiss after [the] complaint had been amended three times, a trial date

7

set, and a jury sworn, and the trial judge had decided that [the] plaintiff had not stated a claim," or as in *Young v. John McShain, Inc.*, 130 F.2d 31 (4th Cir. 1942), where the plaintiff moved to dismiss "when case was already at trial and [the] plaintiff had admitted that the claims sought to be dismissed were without merit." *Id.* Nonetheless, the Fourth Circuit held that "the proceedings were more advanced than a number of cases cited in which voluntary dismissal was held proper," such as *Southern Railway v. Chapman*, 235 F.2d 43 (4th Cir. 1956), where the "defendant had merely filed a motion for transfer," and *Holiday Queen Land Corp. v. Baker*, 489 F.2d 1031 (5th Cir. 1974), where the "motion [was] filed just four months after [the] defendant joined as [a] party," and the defendant had "participated in little or no discovery and incurred 'a minimum of expense.'" *Id.*

In his motion, Goodman does not address any factors relevant to the Court's Rule 41(a)(2) analysis. He certainly does not address the prejudice that would befall the respondent if his petition were dismissed without prejudice. The respondent does. As the respondent explains—and as Goodman does not dispute—the warden has been litigating this case for almost four years and has "expended a significant amount of time and resources in responding to Mr. Goodman's habeas petition," including "fil[ing] approximately 76 pages of substantive briefing and over 400 pages of state-court records in response to Mr. Goodman's allegations." ECF 22, at 6 (citing ECF 10 – 10-6, 13 – 13-2, 15-1). The respondent filed an answer and exhibits in 2022, a status report in 2024, and a supplemental answer and exhibits in 2024. ECF 10 – 10-6, 12 – 12-1, 13 – 13-2. Though the respondent has not filed a dispositive motion or prepared for trial, he has expended significant time and resources responding to the petition. If this petition were dismissed without prejudice and then refiled, the respondent would have to spend more time and resources responding to it. While the prejudice to the respondent is not as extreme as it would be if the motion had been

8

filed on the eve of trial, the prejudice is similar to that of the defendant in *Andres*, which the Fourth Circuit found sufficient to affirm the denial of a plaintiff's motion to dismiss without prejudice.

The prejudice to the respondent—who has litigated this case diligently—must be considered alongside Goodman's diligence in pursuing his claims, which has been lacking. Goodman first filed his petition on December 27, 2021. On January 10, 2022, the Court ordered Goodman to supplement his petition within 28 days. ECF 2. When Goodman failed to do so, the Court dismissed his petition on April 20, 2022. ECF 3. On June 1, 2022, Goodman asked the Court to reopen the case and stay it until his postconviction relief proceedings concluded. ECF 4. He stated that it appeared the Court did not receive his "last correspondence," but he did not explain what he had written or when. *Id.* The Court granted the motion to reopen, denied the motion to stay, and directed Goodman to supplement his petition within 28 days, which he did. ECF 5, 6. The warden filed a response arguing that several of Goodman's claims were procedurally defaulted. ECF 10. On May 31, 2024, the Court granted Goodman 28 days to respond to the warden's procedural default argument. ECF 11. The Court did not hear from Goodman until January 13, 2025, when he filed correspondence that did not address the procedural default argument. ECF 16. The Court has given Goodman more than ample time to respond to the respondent's arguments on exhaustion and procedural default. Goodman has been on notice since at least December 9, 2022 (when the respondent filed an answer to the petition) that he must exhaust his state court remedies before he may pursue his habeas petition. In the intervening two years and nine months, Goodman still has not justified his failure to exhaust his claims or shown that state court remedies are still available. Given the prejudice to the respondent, Goodman's lack of diligence in pursuing postconviction and habeas relief, his insufficient explanation of the need

for dismissal without prejudice, and the fact that the petition has been pending for almost four years, the Court finds that dismissal of Goodman's petition without prejudice would not be proper.

Goodman asks, in the alternative, that the Court stay this case to allow him time to exhaust his state court remedies. Goodman claims he recently received the help he had not received previously and learned that he failed to exhaust his remedies. ECF 21, at 1. He hints at new claims attacking his postconviction counsel, stating that postconviction counsel "fail[ed] to call post conviction witnesses to support the allegations raised" and "refused to call trial counsel to question counsel on errors of omission, or commission." *Id.* at 2. Goodman also vaguely suggests he may file claims attacking the legality of his sentence. *See id.* ("Sentence issues were raised and not finally litigated . . . .").

Courts have the inherent authority to stay a case "under their general equity powers and in the efficient management of their dockets to grant relief." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983); *see Ryan v. Gonzales*, 568 U.S. 57, 73 (2013). To decide whether to exercise this power, the Court "weigh[s] competing interests and maintain[s] an even balance." *Williford*, 715 F.2d at 127 (quoting *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir. 1983) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Id.*

Goodman's request to stay this case is denied. He has not shown any circumstances that outweigh the prejudice to the respondent if this litigation were extended into its fourth year. Goodman filed his petition in 2021, and the Court dismissed it for failure to prosecute and then reopened the case at Goodman's request. In December 2022, the respondent noted that Goodman had not exhausted his claims, and the respondent explained the steps Goodman needed to take to

10

exhaust his claims. ECF 10, at 47–48. Goodman had until July 15, 2024 to file an appeal and exhaust his claims in his postconviction proceeding, but he failed to do so. Now, Goodman apparently seeks to raise and exhaust brand new claims. Yet he does not explain why this case must be stayed before he may pursue these new claims. He does not justify his apparent delay in pursuing those new claims. But most importantly, Goodman still has not countered the respondent's argument from 2022 that the claims in his habeas petition are procedurally defaulted. Goodman has had years to exhaust his state court remedies. Given Goodman's lack of diligence in pursuing postconviction remedies and his failure to justify a stay by showing clear and convincing circumstances that outweigh the harm to the respondent, the Court will not stay this case.

Goodman's motion to dismiss without prejudice or stay the case is denied.

### B. The Respondent's Request for Dismissal

The respondent asks to dismiss Goodman's habeas petition because the claims in the petition are procedurally defaulted.

When a state prisoner fails to exhaust available remedies in state court before filing a habeas petition in federal court and the state court "would . . . find the claims procedurally barred," the claims are deemed procedurally defaulted, and the federal court generally may not consider them. *Juniper v. Davis*, 74 F.4th 196, 208–09 (4th Cir. 2023) (quoting *Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021)). The federal court may consider a procedurally defaulted habeas claim only if it falls within a recognized exception. *Richardson v. Kornegay*, 3 F.4th 687, 695 (4th Cir. 2021).

For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in postconviction proceedings. To exhaust a claim on direct appeal in

non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Supreme Court of Maryland by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301. To exhaust a claim through postconviction proceedings, a defendant must assert the claim in a petition filed in the circuit court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md. Code Ann., Crim. Proc. §§ 7-101 to 7-103. After a decision on a postconviction petition, further review is available through an application for leave to appeal filed with the Appellate Court of Maryland. *Id.* § 7-109. If the Appellate Court of Maryland denies the application, there is no further review available, and the claim is exhausted. Cts. & Jud. Proc. § 12-202. Maryland does not permit a second state petition for postconviction relief. *See* Crim. Proc. § 7-103(a).

Here, the respondent argues that the entire petition is procedurally defaulted because Goodman failed to appeal the state circuit court's denial of his postconviction petition to the Appellate Court of Maryland. ECF 13, at 7–10. The Court agrees. The circuit court denied Goodman's postconviction petition on June 12, 2024. ECF 12-1, at 46. Maryland requires that an application for leave to appeal the denial of a postconviction petition be filed within 30 days of entry of judgment. *See* Md. Rule 8-204(b). That date has passed. Because Goodman failed to timely file an application for leave to appeal the denial of his postconviction petition to the Appellate Court of Maryland, the petition is procedurally defaulted.

The respondent also asserts that two of Goodman's claims are procedurally defaulted for the additional reason that Goodman never raised them in the state trial court. Specifically, the respondent points to two claims in Goodman's habeas petition: Ground One, that Goodman's counsel failed to file an appeal, and Ground Two, that the trial court failed to address Goodman's two new motions for new counsel. ECF 10, at 48–49. Again, the respondent is correct. In

12

Goodman's state postconviction petition, he identified only three claims: (1) the court breached the plea agreement by sentencing him above the guidelines range; (2) the plea was not knowing and voluntary; and (3) trial counsel was ineffective because he failed to review discovery with Goodman and failed to file a motion for reconsideration of sentence. ECF 15-1, at 6–7. Goodman did not assert the two new grounds for habeas relief—that his counsel had failed to appeal his conviction or that the trial court failed to address his motions for new counsel—in his state postconviction petition. Goodman may no longer raise these claims in state court because Maryland permits only a single petition for postconviction relief, *see* Crim. Proc. § 7-103(a), and he already filed one. These claims are procedurally defaulted for this additional reason.

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice—the conviction of an actually innocent person. *See Murray v. Carrier*, 477 U.S. 478, 495–96 (1986); *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494. Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494

13

(1991)). Such cases are generally limited to those for which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. The *Schlup* mandate ensures that a gateway actual innocence claim must be "truly 'extraordinary.'" *Id.* (quoting *McCleskey*, 499 U.S. at 494).

Neither exception to the procedural default bar applies here. Goodman failed to respond to the Court's request on May 31, 2024, that he address the respondent's procedural default arguments. ECF 11. He has not shown cause or prejudice. Nor has he shown a "miscarriage of justice." *See Schlup*, 513 U.S. at 315 (quoting *McCleskey*, 499 U.S.at 494). At best, Goodman references his innocence in his petition by stating, "I was convicted of a crime that I did not do." ECF 1-1, at 2. Goodman's mere assertion of his innocence is not sufficient to meet the high standard for a gateway actual innocence claim. While unclear, it appears that Goodman is repeating the argument he made before the circuit court: that he did not assault the victim. But that court asked Goodman at the plea hearing if he understood he would be convicted of first-degree assault under accomplice liability even if he did not physically assault the victim, and Goodman advised he understood. *See* ECF 10-3, at 19–20. Further, the state advised the circuit court that the victim intended to testify that Goodman did, in fact, assault her. *See id.* at 25. Goodman has failed to meet the standard for actual innocence to excuse the procedural default of his claims.

Goodman's petition for a writ of habeas corpus is dismissed.

### III. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Because the accompanying order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires the issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.*

Goodman has failed to satisfy this standard on any of his claims. Therefore, a certificate of appealability shall not issue.

### IV.   Conclusion

For the reasons stated, the Court dismisses Goodman's petition for a writ of habeas corpus and denies a certificate of appealability. A separate order will issue.

September 24, 2025
Date

Deborah L. Boardman
United States District Judge